# Michael M. Baden, M.D.

15 West 53rd Street, Suite 18
New York, New York 10019

Telephone: (212) 397-2732

Facsimile: (212) 397-2754

21 June 2010

*Via e-mail: legaldove2@yahoo.com*

Carol D. Powell Lexing, Esq.
141 Desiard Street
Monroe, LA 71201

Re:     *Baron DeAundra Pikes, deceased*

Dear Attorney Lexing:

Pursuant to our discussions, enclosed is my opinion relative to the death of Mr. Baron DeAundra Pikes based on the following materials that I have reviewed:  the autopsy report, microscopic slides, autopsy photographs, police reports, medical and hospital records, a Taser Operating Manual, the Winnfield City Police Procedures Manual, and Volumes I and II of Dr. Randolph Williams deposition testimony.

Mr. Pikes, a 21 year old Black male, was seen walking in Winnfield, Louisiana, on January 17, 2008 about 1:28 p.m. by Officer Scott Nugent who was aware that there was an outstanding felony warrant for him.  Mr. Pikes initially ran but when caught dropped to the ground as ordered and was handcuffed behind his back without a struggle.  He was tasered about nine times during the next approximately thirty minutes, not to subdue or control him, but because he did not obey commands quickly, the last taser discharges while still in the back of the police car after arriving at the police station.

EXHIBIT

11

Baden/Pikes
21 June 2010
Page 2

According to Officer Nugent, Mr. Pikes had to be dragged from the car into the police station and put in a chair because he would not stand up. The officers claim that Mr. Pikes then spontaneously volunteered that he had asthma and that he had taken PCP and Crack just before he slid lifeless from the chair to the floor. An ambulance was called at 2:04 p.m. Responding EMS personnel could find no blood pressure or pulse. He was pronounced dead after he arrived at the hospital.

According to the Winnfield City Police Department Procedures Manual, the Taser is to be used "to provide immediate handcuffing of the subject while he or she is disabled due to the Taser effects." It is not supposed to be used *after* handcuffing, especially in this situation where Mr. Pikes was not struggling, threatening or attempting to get away. It is not supposed to be used to punish. After a single application, the on scene supervisor "shall evaluate the subject's condition and actions before administering a second application of the Taser (when safe and practical to do so)." There is no indication that more than two Taser applications should be applied. Indeed, nine Taser applications could be considered to be torture. The Police and Taser Manuals also state that after being tasered, the "subject shall be transported to the appropriate medical facility" immediately, *before* being brought to a police station. The claim that Mr. Pikes was able to suddenly tell police that he had taken PCP and Crack and that he suffered from asthma – all alleged risk factors for causing death when a Taser is used – after he had been be dragged from the police car and just before EMS responded to find him lifeless lacks credibility.

The autopsy showed no pre-existing natural disease that would have caused or contributed to his sudden death. Mr. Pikes has no history of asthma, the lungs at autopsy show no evidence of asthma and I find no evidence of asthma on examination of the lungs under the microscope. The heart did show thickening of the right ventricle but there was no history and no signs or symptoms of heart or lung disease. Toxicology showed that he had used marijuana but not PCP or cocaine or Crack. On microscopic examination there was prominent sickling of red blood cells which occurred after Mr. Pikes died as his blood oxygen level decreased, a manifestation of sickle cell trait. Sickle trait rarely causes illness or sickle crisis. Sickle crisis can only be diagnosed during life and cannot be diagnosed by autopsy alone since all persons with sickle cell trait will develop sickled red blood cells after death – whether the death is from cancer, heart disease, auto accident, stabbing – as the oxygen level in the blood diminishes after death. The changing of the shape of red blood cells from round to a sickle-like appearance is a chemical and physical reaction to lowering of oxygen in the blood which occurs in everyone who has a sickle gene. Sickling can be as much a post-mortem change as rigor mortis and lividity. Further, sickle cell crisis does not cause sudden unexpected death – as occurred here. It takes many hours and days for a sickle cell crisis to develop, cause symptoms and progress to death.

It is my opinion, to a reasonable degree of medical certainty, on the basis of the above materials that I have reviewed, that Mr. Pikes' death was directly caused by the cumulative effects of approximately nine 50,000 volt electroshocks from a conductive

Baden/Pikes
21 June 2010
Page 4

electric weapon that had been discharged during an approximately 30 minute time period while handcuffed, that the cause of Mr. Pikes' death was "Sudden cardiac arrest following multiple electroshock applications from a conductive electrical weapon" and that the manner of death is "Homicide" – death caused by another.  This opinion is subject to change if I receive additional materials, especially if I could review any video or photographs taken of Mr. Pikes after he arrived at the police station.


Michael M. Baden, M.D.
Former Chief Medical Examiner
 New York City


MMB:ph