RECEIVED

APR 1 3 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| LATRINA D. THOMAS | CIVIL ACTION NO. 08-1167 |
| -vs- | JUDGE DRELL |
| CITY OF WINNFIELD, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court are three Motions in Limine to exclude expert testimony and

five Motions for Summary Judgment filed by various Defendants. The City of

Winnfield ("City"), Chief of Police Johnny Ray Carpenter ("Chief Carpenter"), Mayor

Deano Thornton ("Mayor Thornton"), police officer Alan Marsdin[1] ("Officer Marsdin"),

police officer Raymond Carpenter ("Officer Carpenter"), police officer Scott Nugent[2]

("Officer Nugent"), and Taser International, Inc. ("TI") (collectively "Defendants")[3]

jointly filed Motions in Limine to exclude the testimony of the following expert

---

[1]     Alan Marsdin's last name occasionally appears as "Marsden" in the record. This
opinion uses the spelling "Marsdin" found in his answer. (Doc. 34).

[2]     Scott Nugent's last name occasionally appears as "Nuent" in the record. This opinion
uses the spelling "Nugent" found in his answer. (Doc. 52).

[3]     Winnfield Police Department, Winnfield City Council, and police officer Cargyle Branch,
Jr. were also named as defendants in Plaintiff's Complaint. We discuss the Police
Department and City Council *infra*. The Court entered a stay as to Officer Branch as a
result of bankruptcy proceedings. (Docs. 80 & 90). The stay is still in place, and we do
not address the claims against Officer Branch in this ruling and accompanying
judgment. We do consider his actions during the incident as it relates to the claims
against Chief Carpenter, Mayor Thornton, and the City for failure to train and/or
supervise under Section 1983 and vicarious liability under state law.

witnesses: Dr. Michael Baden ("Dr. Baden") (Doc. 151), Dr. Anthony Storace ("Dr. Storace") (Doc. 154), and Larry Alan Smith ("Mr. Smith") (Doc. 158).

In addition, we address the pending Motions for Summary Judgment filed by the City, Mayor Thornton, and Chief Carpenter (Doc. 152); by TI based on the Louisiana Products Liability Act ("LPLA" or "the Act") (Doc. 153); by Officer Nugent (Doc. 156); by Officers Carpenter and Marsdin (Doc. 157); and by multiple Defendants based on an absence of medical causation (Doc. 167). We have considered the arguments by the parties contained in their briefs and those made at a hearing on January 4, 2012, and we are prepared to rule on the pending motions in turn.

I.    **Procedural Background**

Plaintiff alleges on January 17, 2008, Officer Nugent repeatedly shocked Baron D. Pikes ("Mr. Pikes")[4] with a TASER X26 Electronic Control Device ("ECD") manufactured by TI.[5] Specifically, Plaintiff alleges Mr. Pikes was shocked at least nine times at 50,000 volts each while he was handcuffed and in police custody. Upon being transported to the police department, Mr. Pikes showed signs of physical distress and had difficulty breathing. He was transported to the hospital where he was pronounced dead shortly thereafter. Plaintiff asserts the following claims for relief against all Defendants (except TI): wrongful death, survival, and loss of consortium under 42 U.S.C. § 1983 based on the use of excessive force and

---

[4]    Mr. Pikes is also referenced in pleadings by his nickname "Scooter" and a different last name "Collins." This opinion uses "Baron D. Pikes" as it is the name listed on his birth certificate.

[5]    The term "ECD" will be used to refer to these devices in general. When reference is made to the specific ECD used on Mr. Pikes, it will be referred to as "Officer Nugent's Taser X26."

deprivation of medical attention in violation of Mr. Pikes' constitutional rights; general tort liability pursuant to Louisiana Civil Code Article 2315; Louisiana state law intentional torts of assault and battery; and negligence under Louisiana state law.[6] Plaintiff also asserts products liability actions based in negligence and strict liability against TI as the manufacturer of Officer Nugent's Taser X26.[7]

Officer Nugent was criminally charged with an offense resulting in Mr. Pikes' death in the Louisiana 8th Judicial District in Winn Parish. The case proceeded to trial in the fall of 2011, and Officer Nugent was acquitted. Portions of the testimony from the criminal trial have been attached as exhibits to motions before us. The parties presented evidence on the Motions in Limine at a hearing on January 4, 2012.

## II.   Motions in Limine to Exclude Expert Testimony

### A.   Daubert Standard

The Motions in Limine to exclude expert testimony are evaluated in accordance with the Federal Rules of Evidence and governing jurisprudence. Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[6]   The Court is aware La. C.C. art. 2315 encompasses negligence, but Plaintiff differentiated La. C.C. art. 2315 and negligence as separate claims for relief in her complaint. (Doc. 1).

[7]   The LPLA provides Plaintiff's exclusive theory of recovery against TI as the manufacturer of Officer Nugent's Taser X26 and does not differentiate between negligence and strict liability. La. R.S. 9:2800.52.

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592–93 (1993), trial courts act as "gatekeepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." The gatekeeping function is meant to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable." Id. at 589.

The party offering expert testimony is not obligated to prove the testimony is correct. Rather, the party bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable." Moore v. Ashland Chemical, Inc., 151 F.3d 269, 276 (5th Cir. 1998), cert. den., 526 U.S. 1064 (1999). In analyzing reliability, the trial court must assess whether the reasoning or methodology supporting the expert's testimony is valid. The point is to exclude expert testimony based solely on subjective belief or unsupported speculation. See Daubert, 509 U.S. at 590. "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000).

Daubert provides an illustrative (but not exhaustive) list of factors district courts may use to evaluate the reliability of expert testimony. These factors include

whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. Daubert, 509 U.S. at 593–94.

Subsequently, in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999), the Supreme Court emphasized the Daubert analysis is a "flexible" one, and "the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. (emphasis omitted.) The Kumho Tire Court further explained the district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152. The Fifth Circuit has clarified that "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equipment Corp, 394 F.3d 320, 325 (5th Cir. 2004).

As Judge Vance noted in Kirkland v. Marriott International Inc., 416 F.Supp.2d 480, 484 (E.D. La. 2006), the Advisory Committee Note to Rule 702 of the Federal Rules of Evidence explains testimony from an expert whose reliability is based mainly on the expert's personal observations, professional experience, education, and training may be admissible. Specifically, the Committee Note provides:

> Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill,

> training or education – may not provide sufficient foundation for
> expert testimony.  To the contrary, the text of Rule 702 expressly
> contemplates that an expert may be qualified on the basis of
> experience.

Additionally, in Pipitone v. Biomatrix, 288 F.3d 239 (5th Cir. 2002), an expert's testimony was found to be reliable even though he did not perform any experiments to test his conclusions. Rather, he simply reviewed the available literature, applied his knowledge to the situation, and ruled out other explanations because they were not probable under the facts of the plaintiff's case. Likewise, in Martin v. Mobil Exploration and Producing, 224 F.3d 402 (5th Cir. 2002), an ecologist's expert testimony was deemed reliable when it was based upon his observations of a flooded marsh and his expertise in marshland ecology.

   1.    *Dr. Michael Baden (Doc. 151)*

Plaintiff offers Dr. Michael Baden to testify as to the cause of Mr. Pikes' death. To begin, we find Dr. Baden's training, education, and experience are more than adequate to qualify him as an expert in the field of forensic pathology. However, for the following reasons, his testimony will be limited to this specific field and the associated methodologies (including a critique of Dr. Joel Carney's procedure in performing or analyzing the autopsy findings). Plaintiff argues, and we agree, Dr. Baden's method of "eliminating all other causes of death" is reliable for determining a cause of death. Although the Fifth Circuit has not specifically ruled on the issue, there is federal jurisprudence for the proposition that "differential diagnosis is a common scientific technique, and federal courts, generally speaking, have recognized that a properly conducted differential diagnosis is admissible under *Daubert*." Clausen v.

6

M/V New Carissa, 339 F.3d 1049, 1057 (9th Cir. 2003) (citations omitted) (italics in original). See also, Pick v. American Med. Sys., Inc. 958 F. Supp. 1151, 1162–63 (E.D. La. 1997).

We note further Dr. Baden was admitted as an expert in the field of forensic pathology in the criminal trial of Scott Nugent for the death of Mr. Pikes, and he was allowed to opine as to the cause of death. The Louisiana Second Circuit Court of Appeals did not overturn the district court's Daubert decision allowing Baden to testify. Finally, Dr. Baden has been admitted as an expert in the field of forensic pathology in numerous other federal courts.

However, we find Dr. Baden is not qualified to testify regarding the physiological effect of an Electronic Control Device ("ECD") on a human being because he lacks education, training, or experience in electricity or its effects on people. By his own admission, Dr. Baden is not an expert in cardiology, electrophysiology, electricity, and a number of other fields which involve electricity and its effect on the human body. In their brief, Defendants reference a number of persuasive federal district court cases in which experts had their testimony excluded because they were not experts in any "electricity specific" field. We agree with and adopt the reasoning of our sister courts:

In Wilson v. City of Lafayette, 2010 WL 728336, *10 (D. Colo. 2010), the district court excluded the expert opinion of the forensic pathologist (who conducted the autopsy) because the expert lacked a basis for connecting the use of the TASER to the decedent's death. Of note: "the Court finds that [the expert] may testify about

7

how she conducted the autopsy of [decedent] and the process by which she ruled out certain causes of death." Id. However, "because [the expert's] opinion regarding the nature and effect of a TASER is based solely on the temporal sequence of events and on a limited amount of post-autopsy research on TASERs, she may not offer her opinion regarding the specific nature of the possible impact of the TASER charge." Id. It should be noted the decedent in Wilson was found to have a pre-existing heart condition.

The District of Nevada confronted a case with facts very similar to this case in Neal-Lomax v. Las Vegas Metropolitan Police Dep't, 574 F. Supp. 2d 1193 (D. Nev. 2008). The Neal-Lomax court excluded the opinion of a forensic pathologist who would have testified that the use of the TASER was a "significant contributing factor to the deceased's ultimate expiration." Id. at 1203. The Neal-Lomax court decided: "While [the expert] is qualified by his experience, training, and education to be a forensic pathologist generally, [the expert] has little to no knowledge, training, experience, education, or expertise related to electronic control devices generally or the Taser specifically." Id. The court also found the expert lacked "some objective basis from which to derive an opinion that the Taser causes the physiological effects [the expert] ascribes to the Taser." Id. at 1204.

In Wackman v. Rubsamen, 602 F.3d 391 (5th Cir. 2010), the Fifth Circuit allowed a qualified forensic pathologist (who did not conduct the autopsy) to opine as to the cause of death by relying on the autopsy report, medical records, and *reliable* scientific literature. The Fifth Circuit also stated in Wells v. Smithkline

Beecham Corp., 601 F.3d 375, 379 (5th Cir. 2010) that the literature upon which an expert bases his opinion must provide the "necessary 'scientific knowledge.'" The Wells court confronted the issue of whether a medication used to treat Parkinson's disease was the *cause* of plaintiff's compulsive gambling. The Fifth Circuit in Wells rejected an expert who relied on "anecdotal evidence" as opposed to evidence with "statistical significance." Id. The Wells court focused on the publication and peer-review of the literature and whether the nature of the studies relied upon proved "a statistically valid reproducible result which could be used to establish causation." Id. at 381, n.29.  Plaintiff has not identified and we have found nothing in the record to suggest Dr. Baden used reliable scientific literature to develop his opinions about the effect of ECDs on the human body and on Mr. Pikes in particular.

In short, Dr. Baden lacks experience, education, or training in electricity and he is unable to reference reliable scientific literature to support his opinion that Officer Nugent's Taser X26 caused Mr. Pikes' death. Accordingly, Defendants' motion in limine to exclude Dr. Baden's testimony will be **GRANTED IN PART** and **DENIED IN PART**.

      2.     *Dr. Anthony Storace (Doc. 154)*

Plaintiff offers Dr. Anthony Storace to testify as to electrical design and engineering and safety engineering. Dr. Storace holds a Ph.D. in mechanical engineering and has been qualified as an expert in this field in multiple cases. A review of Dr. Storace's education, experience, and expert testimony reveals his expertise in the field of mechanical engineering in general. However, Dr. Storace

lacks any qualifications regarding ECDs or the Taser X26 model in particular. He has received no education or training concerning the function of ECDs; he has no experience with researching the physiological effect of ECDs on the human body; and he has no foundation for forming an opinion about police procedures or use of force.

Based on the threshold requirement in Fed. R. Evid. 702 concerning Dr. Storace's knowledge, skills, experience, and training, we will admit his testimony insofar as it relates to the basic principles of electricity which form part of the curriculum for mechanical engineering. Dr. Storace will also be permitted to testify generally as to the use of electricity in relation to the human body. For the same reasons, his testimony will be excluded insofar as it relates to ECDs of any type including Officer Nugent's Taser X26. His testimony will also be excluded as concerns the use and application of electricity in ECDs, the effects of ECDs on the human body, safety procedures, warnings, and the use of ECDs in law enforcement situations. In short, Dr. Storace will not be allowed to testify about anything specific to ECDs given his lack of qualifications regarding the devices. Accordingly, Defendants' Motion in Limine to Exclude the Testimony of Dr. Anthony Storace (Doc. 154) will be **GRANTED IN PART and DENIED IN PART** as detailed above.

3.   _Larry Alan Smith (Doc. 158)_

Plaintiff offers Larry Alan Smith as an expert in law enforcement policy and procedure, use of force, and use of ECDs in law enforcement situations. Mr. Smith has extensive training and experience in law enforcement as a police officer and investigator. Mr. Smith has obtained numerous certifications concerning the

standards and continuum of force used by police officers in situations similar to the incident involving Mr. Pikes. Mr. Smith has consulted or testified on the use of force in many cases, and his testimony regarding force used by Officer Nugent would be helpful to the trier of fact. However, Mr. Smith's testimony would not be helpful as it relates to the officers' alleged violations of Winnfield Police Department procedures and Taser safety warnings and procedures because these standards speak for themselves. The trier of fact does not require assistance from an individual with expertise to determine whether the officers did or did not follow procedures which are clearly set forth in admissible documentary evidence. Furthermore, Mr. Smith's personal opinions concerning the behavior of the officers will also be excluded. We specifically note his reported conclusions that the officers "illegally tortured Mr. Pikes" and their "lack of character and integrity" are not grounded in any training or experience.

Regarding the use of ECDs, Mr. Smith's testimony is limited to standards of police conduct for when an ECD should be used in law enforcement situations and the incident involving Mr. Pikes. Mr. Smith's certification as a Taser instructor does not include special medical knowledge about the effects of an ECD on the human body, and his testimony insofar as it relates to physiological effects of ECDs will be excluded.

In his report, Mr. Smith provides a number of opinions about the policies and procedures of the Winnfield Police Department. He recommends rather drastic measures for the future management of the department, including that the police

department "should be taken over by the chief law enforcement officer" in Winn

Parish and the "department should be disbanded." Despite his law enforcement

experience, Mr. Smith's opinions in this regard are not relevant to the liability of any

Defendant and will be excluded. By his own admission, Mr. Smith has no knowledge

or experience in developing or implementing policies and procedures for entities

whose personnel use ECDs, i.e., police departments; therefore, his conclusions about

the propriety of the standards established by the Winnfield Police Department will be

excluded. In addition, his opinions about the training and supervision of officers who

use ECDs will also be excluded given his lack of training and experience about those

standards.

   In summary, Mr. Smith's testimony will be limited to the continuum of force

standards applicable to law enforcement situations, and he may opine about the force

used by Officers Nugent, Carpenter, and Marsdin against Mr. Pikes and the

standards for providing medical attention during the incident. Accordingly,

Defendants' Motion in Limine to Exclude the Testimony of Larry Alan Smith

(Doc. 158) will be **GRANTED IN PART** and **DENIED IN PART**.

III.   <u>**Motions for Summary Judgment**</u>

   A.   **Summary Judgment Standard**

   A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective

December 1, 2010, "the amended rule contains no substantive change to the

standard." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680, n.8 (5th Cir. 2011). Accordingly, we equate the word "issue" in the old language of Rule 56 with "dispute" in the amended version. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

    1.    *City Council of Winnfield and Winnfield Police Department*

To begin, the City, Chief Carpenter, and Mayor Thornton correctly point out in their Motion for Summary Judgment (Doc. 152) that the City Council of Winnfield ("City Council") and the Winnfield Police Department ("Police Department") lack the capacity to be sued as independent entities. The City Council and Police Department were named defendants in the complaint, but Plaintiff has not presented argument in support of maintaining the entities as defendants in the suit. For the sake of brevity, we refer to a separate ruling we issued on a similar matter in which we describe the lack of procedural capacity to be sued applicable to these entities. Steele v. Police Dep't of Oakdale, 2010 WL 816177, *2–3 (W.D. La. 2010).

**B.    42 U.S.C. § 1983 Standards**

The gravamen of this suit is 42 U.S.C. § 1983 ("Section 1983"), which provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To state a viable claim under 42 U.S.C. § 1983, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008) (quoting Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)). Because Section 1983 contemplates violations of both constitutional and statutory mandates, "'a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.'" Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697, 702 (5th Cir. 2007) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original)).

Plaintiff alleges the conduct of Officers Nugent, Carpenter, and Marsdin, the City, Mayor Thornton, and Chief Carpenter violated Mr. Pikes' constitutional rights by the use of excessive force and their deliberate indifference toward Mr. Pikes' need for medical attention. On the merits, to establish personal liability in a Section 1983 action, it is enough to show the official, acting under color of state law, caused the deprivation of a federal right. See Monroe v. Pape, 365 U.S. 167 (1961). Whether the official caused the deprivation depends on the status of the official, i.e., supervisor or subordinate, and will be discussed *infra.* The claims against Officers Nugent, Carpenter, and Marsdin, Mayor Thornton, and Chief Carpenter as officials of the City

14

are "another way of pleading an action against an entity of which an officer is an agent," and are duplicative of the suit against the City. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quotations and citations omitted). Accordingly, the claims against these individuals in their official capacities will be **DISMISSED**.

Regarding the violation of constitutional rights, to state successfully an excessive force claim under 42 U.S.C. § 1983, "a plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (quoting Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009)).[8] The relevant inquiry relates to the "objective reasonableness" of the officer's conduct, rather than his subjective intent, "and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." Id. The Fifth Circuit has described the "objective reasonableness" standard in this way:

> An injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible-that is, objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. The test for reasonableness must consider whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

---

[8]    Excessive force claims are governed by the Fourth Amendment: "'*[A]ll* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" Goodman v. Harris County, 571 F.3d 388, 397 (5th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (emphasis in original).

Collier v. Montgomery, 569 F.3d 214, 218–19 (5th Cir. 2009) (internal footnotes and quotations omitted).

To reemphasize, "[e]xcessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (quoting Graham, 490 U.S. at 396). Moreover, arguments by a nonmovant which amount to "conjecture arising from undisputed facts" do not raise genuine issues of material fact in an excessive force case, but discrepancies between an officer's version of events and the accounts of eyewitnesses, for example, may be sufficient to justify a denial of summary judgment.  See Ontiveros, 564 F.3d at 385 (citing Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001)).

Deliberate indifference is also a cognizable theory of liability under § 1983. See, e.g., Longoria v. Texas, 473 F.3d 586 (5th Cir. 2006). As a pretrial detainee, Mr. Pikes' "constitutional right to medical care . . . flows from the procedural and substantive due process guarantees of the Fourteenth Amendment." Wagner v. Bay City, et al., 227 F.3d 316, 324 (5th Cir. 2000) (citations omitted). Plaintiff must show the police officers "acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." Id. Further "'deliberate indifference' requires that the official have *subjective* knowledge of the risk of harm." Id. (citations omitted) (emphasis in original). The Fifth Circuit reasoned in Hare v. City of Corinth, 74 F. 3d 633, 643 (5th Cir. 1996): "constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference

16

as enunciated by the Supreme Court in *Farmer*." (citing <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)). In <u>Farmer</u>, the Supreme Court parsed the phrase "deliberate indifference" and found a prison official to be deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837.

As the Fifth Circuit succinctly articulated in a case on appeal from this Court: "To 'know of' a risk, an official must be 'subjectively aware' of the risk: that is, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" <u>Anderson v. Wilkinson</u>, 550 Fed. Appx. 379, 2011 WL 3965667, *2 (5th Cir. 2011) (citing <u>Farmer</u>, 511 U.S. at 837) (emphasis added). Further, "even if a prison official was subjectively aware of the risk, he may be found free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" <u>Anderson</u>, 2011 WL 3965667 at *2 (citing <u>Farmer</u>, 511 U.S. at 844). As applied to this case, Plaintiff must show there exist some facts suggesting Officers Nugent, Marsdin, and/or Carpenter drew the inference of the risk of substantial harm to Mr. Pikes in order to survive summary judgment on the deliberate indifference claim.

The conduct of Mayor Thornton and Chief Carpenter as supervisors is also considered under a deliberate indifference standard, but their actions are evaluated under a slightly different analysis.[9] Vicarious liability, or respondeat superior, is not available for recovery against supervisors for the actions of their employees under

---

[9]     Plaintiff asserts Mayor Thornton and Chief Carpenter are in supervisory roles vis-a-vis Officers Nugent, Marsdin, and Carpenter. Defendants have not argued otherwise and we proceed on this assumption.

Section 1983. <u>Atteberry v. Nocona General Hosp.</u>, 430 F.3d 245, 254 (5th Cir. 2005);

<u>see</u> <u>also</u>, <u>Doe v. Taylor</u>, 15 F.3d 443 (5th Cir. 1994). However, "supervisors may be

liable for constitutional violations committed by subordinate employees when

supervisors act, or fail to act, with *deliberate indifference* to violations of others'

constitutional rights committed by their subordinates." <u>Id.</u> (citations omitted)

(emphasis in original).

 The supervisor's deliberate indifference is also considered under a subjective

standard, and "'an official's failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, cannot . . . be condemned as

the infliction of punishment.'" <u>Atteberry</u>, 430 F.3d at 255 (citing <u>Farmer</u>, 511 U.S. at

838). The Fifth Circuit determined in <u>Atteberry</u> that two supervisors' knowledge

about dangerous drugs missing from the hospital inventory, plus significantly

increased death rates, created the possibility of the supervisors' being deliberately

indifferent toward a subordinate nurse injecting patients with the drug. <u>Id.</u> at 256. To

survive a motion for summary judgment, there must be some evidence suggesting

the supervisors "had subjective knowledge of a serious risk of harm." <u>Id.</u> at 255.

 It is undisputed the City of Winnfield qualifies as a municipality under federal

law. The liability of the City under Section 1983 is evaluated according to the

standards set forth in <u>Monell v. Dep't of Soc. Servs. of the City of New York, et al.</u>, 436

U.S. 658 (1978). As is the case with the Mayor and Chief, the City is not liable under a

theory of vicarious liability. <u>Id.</u> at 694.

The Supreme Court decided in <u>Monell</u> :

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

<u>Monell</u>, 436 U.S. at 694–95. The violation of constitutional rights must be attributable to the City's policy, practice, or custom in order for the City to be liable for the officers' actions. The custom need not have "received formal approval through the [City's] official decisionmaking channels" in order for the municipality to be liable under Section 1983. <u>Id.</u> at 690–91.

The City could also be liable under a "failure to train" theory. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 387 (1989). This requires a showing that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388. Such a standard is similar to the deliberate indifference required for the Mayor and Chief in that some manner of subjective intent is necessary. As the Supreme Court described in <u>City of Canton</u>, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality–a 'policy' as defined by our prior cases–can a city be liable for such a failure under § 1983." <u>Id.</u> at 389.

1.    *Officer Nugent*

Although the details are in dispute, the record clearly indicates Officer Nugent used his Taser X26 on Mr. Pikes multiple times and Mr. Pikes exhibited some level of physical distress prior to receiving medical treatment. As described above, the right to be free from excessive force and to receive medical attention are

19

grounded in the Fourth and Fourteenth Amendments respectively of the U.S. Constitution. Goodman, 571 F.3d at 397; Wagner, 277 F.3d at 324. As a threshold matter, there is a genuine dispute as to the material facts establishing a constitutional violation against Mr. Pikes and the summary judgment analysis will continue. Therefore, for the purposes of this ruling only, we proceed on the assumption that such violation of constitutional rights was effected by Officer Nugent. As an additional matter, there is no dispute Officers Nugent, Marsdin, and Carpenter are considered state actors who were acting under the color of state law during the incident involving Mr. Pikes.

Under Kentucky v. Graham, the claims against Officer Nugent in his official capacity will be dismissed. 473 U.S. at 165. With regard to the Section 1983 use of force claim in his personal capacity, we find numerous sufficient facts in the record to create a genuine dispute concerning the objective reasonableness of Officer Nugent's use of force on Mr. Pikes. Officer Nugent used his Taser X26, by drive stun or deployed cartridge, on Mr. Pikes at least eight different times. Plaintiff asserts Mr. Pikes was crying out for help during this time. Officer Nugent argues Mr. Pikes was resisting arrest and failing to comply with commands from police officers. Among other disputed facts, the behavior of Mr. Pikes and the threat posed to Officer Nugent during the incident are certainly material to determining Officer Nugent's objective reasonableness in considering his use of force.[10] Accordingly, Officer Nugent's motion

---

[10] Officer Nugent relies on Poole v. City of Shreveport, 2011 WL 202116 (W.D. La. 2011) in support of his argument that his use of force was objectively reasonable. The facts before Judge Stagg in Poole are distinguishable from those here. Most importantly, the record in Poole contained a video of the use of force by the officers unlike the incident

for summary judgment will be **DENIED** as to this issue.

The second Section 1983 claim against Officer Nugent in his personal capacity is for deliberate indifference to Mr. Pikes' need for medical attention. At the motions hearing on January 4, 2012, Plaintiff introduced into evidence a video of Mr. Pikes taken by Officer Nugent at the Winnfield Police Department. The video depicts Mr. Pikes after being tasered and prior to being transported to the hospital. In the video, Mr. Pikes is shackled at the ankles and rolling around on the floor. He occasionally uses his arms to prop himself on his side then rolls alternately from his front to his back. He mumbles incoherently, but at one point he asks for "someone . . . please help me."

Unidentified voices in the background order him to sit up, and they indicate an ambulance is coming and they (the individuals speaking in the video) will let the EMTs handle Mr. Pikes since he appears to be "dead weight." The voices also relay to each other they believe Mr. Pikes is on PCP and/or cocaine. No voice in the video indicates he or she possesses a subjective belief about Mr. Pikes being at risk for serious harm; rather, the voices suggest they believe Mr. Pikes to be uncooperative by not sitting up and following directions. We also note no one in the video actually renders any medical assistance to Mr. Pikes nor do they attempt to assess his condition, but Mr. Pikes is conscious for the duration of the video.

---

with Mr. Pikes. The district judge had clear evidence of the plaintiff in Poole resisting arrest such that the judge was able to determine the objective reasonableness of the use of force. We have disputes in facts presented by officers and eyewitnesses and are not in a position at this stage to determine the objective reasonableness of Officer Nugent's actions.

In his interview with the Winn Parish District Attorney's Office, Officer Nugent stated Mr. Pikes repeatedly said he wanted the officers to "leave him there to die" at the scene where he had been tased. (Doc. 203-5 at p. 5). However, Officer Nugent denies having knowledge that Mr. Pikes was injured or otherwise in physical distress. Rather, he states he thought Mr. Pikes was being "passive resistant," uncooperative, and did not want to go to jail. (Doc. 203-5 at pp. 3–5, 8, 13). Plaintiff argues it was Winnfield Police Department policy for officers to seek medical attention for an individual after having been tased, and Officer Nugent knew of the policies for taser use but failed to follow this one. (Doc. 203-5 at p. 10).

The failure to follow policies is not, by itself, grounds for liability under the deliberate indifference standard required under Farmer and Fifth Circuit jurisprudence. Such policies indicate the inference of substantial risk of harm could be drawn after Mr. Pikes was tased, but Plaintiff has not submitted any evidence which indicates a genuine dispute of fact concerning Officer Nugent's actually having drawn the inference that Mr. Pikes was at risk for serious harm if the policy was not followed.

Plaintiff correctly points out Officer Nugent called for an ambulance at the police department after Mr. Pikes told him he had asthma and he had taken PCP and/or cocaine. This is the first indication Officer Nugent made the inference Mr. Pikes was at risk for medical harm, and Officer Nugent sought medical attention once he made such an inference. Seeking professional medical attention is a reasonable response to the risk of medical harm which Officer Nugent believed existed at the

22

time. Plaintiff has failed to identify in the record and our independent search reveals no genuine dispute of material fact concerning Officer Nugent's alleged deliberate indifference to Mr. Pikes' need for medical attention. Accordingly, Officer Nugent's motion for summary judgment will be **GRANTED** as to the issue of deliberate indifference to providing medical attention.

> ### 2. *Officers Marsdin and Carpenter*

Under Kentucky v. Graham, the claims against Officers Marsdin and Carpenter in their official capacities will be dismissed. 473 U.S. at 165. Plaintiff identifies the acts of Officer Nugent in using his Taser X26 on Mr. Pikes as the only source for alleged excessive force. The record is void of any reference to excessive force used by either Officers Marsdin or Carpenter, and their motion for summary judgment will be **GRANTED** as to this issue.

The same standard for deliberate indifference to the need for medical attention applied to Officer Nugent applies to Officers Marsdin and Carpenter as well. The record shows both Officers Marsdin and Carpenter first learned of facts giving rise to Mr. Pikes' risk for serious medical harm *and they actually made such inference* when Mr. Pikes arrived at the police station and said he was on PCP and/or cocaine and had asthma. An ambulance was dispatched once Mr. Pikes was at the station. Plaintiff has failed to identify in the record any time earlier during the incident when either officer had subjective knowledge of Mr. Pikes being at risk for serious medical attention such that they were deliberately indifferent to his needs. Plaintiff's argument to the contrary is based solely on conclusory allegations using objective

standards. As described above with Officer Nugent, calling for professional medical help upon learning such information is a reasonable response. Officers Marsdin and Carpenter's motion for summary judgment as to this issue will be **GRANTED**.

### 3.   *The City, Mayor Thornton, and Chief Carpenter*

The claims against Mayor Thornton and Chief Carpenter in their official capacities will be dismissed. Kentucky v. Graham, 473 U.S. at 165. With regard to the personal capacity Section 1983 claims, Plaintiff must show Mayor Thornton and Chief Carpenter acted with deliberate indifference toward Mr. Pikes' constitutional rights in their failure to train and/or supervise Officers Nugent, Marsdin, Carpenter, and Branch. In the training and supervision of the officers, it is undisputed Mayor Thornton and Chief Carpenter are considered state actors acting under color of state law for the purposes of the Section 1983 action. As described above, there is no evidence supporting the deliberate indifference to medical attention claims against Officers Nugent, Marsdin, and Carpenter. In the police unit on the way to the station, Officer Branch told Mr. Pikes he would be receiving medical attention and Officer Branch bypassed a hospital on the way to the station. Despite this action, there is no indication Mayor Thornton or Chief Carpenter actually knew this instance occurred or knew if it was a common practice. Lacking any evidence of subjective knowledge, Mayor Thornton and Chief Carpenter cannot be found to be deliberately indifferent.

With regard to the excessive force claim, there exists nothing in the record which suggests either Mayor Thornton or Chief Carpenter possessed subjective knowledge of Officer Nugent's alleged use of excessive force. Plaintiff asserts Officer

24

Nugent had prior instances of misconduct, but such acts are not identified in the record and we are unable to find any evidence the city officials knew Officer Nugent (or any of the other officers named as defendants) were or had the propensity to use excessive force against persons in custody. Without such subjective knowledge, neither the Mayor nor the Chief could be deliberately indifferent toward Mr. Pikes' constitutional rights. Accordingly, the motion for summary judgment concerning the Section 1983 claims against Mayor Thornton and Chief Carpenter will be **GRANTED**.

Similarly, Plaintiff has failed to produce any evidence to support deliberate indifference of the City and/or its officials in failing to train the officers which resulted in the violation of Mr. Pikes' constitutional rights. Canton, 489 U.S. at 387. There is no indication of any "conscious choice" by the municipality of an intentional failure to train its officers in proper use of force or assess and address the need for medical attention. Plaintiff incorrectly asserts "the officers' response from beginning to end reflects how poorly they were trained (or lack of training [sic]), and how dangerous they were when these Defendants put them on the street." (Doc. 200 at p. 19). Plaintiff lacks any action on the part of the City or its officials to support this conclusory allegation.

However, the City's liability warrants a different result under Monell based solely on the conduct of Officer Branch. Monell, 436 U.S. at 694–95. The testimony of Officers Branch and Angel Carter from Officer Nugent's criminal trial was submitted in connection to these summary judgment motions. Such testimony reveals a City policy, custom, or practice that the officers "transport the individual (in custody) to

the station as soon as possible for safety reasons" related to the formation of a crowd. (Doc. 152-4). Such practice is suggested as the reason for Officer Branch's failure to seek medical attention for Mr. Pikes immediately after being tased tased and for Officer Branch's bypass of the hospital on the way to the station.

By way of reminder, the claims against Officer Branch individually are not addressed as described *supra* at n.3, but the liability of the City relates to Officer Branch's failure to provide Mr. Pikes with medical attention. The City policy resulted in Officer Branch's bypassing a medical facility when he had knowledge of Mr. Pikes' medical harm (repeated tasing and requests for help). As noted in <u>Monell</u>, such practice by the officers need not have "received formal approval" by the City in order for the City to be found liable. <u>Monell</u>, at 690–91. Our determination of this issue stems from our discussion of the constitutional right to medical care for persons in police custody. At the summary judgment stage, we do not comment on the likelihood of success as to this claim, but we do find such practice creates a genuine dispute of material fact concerning the City's liability under <u>Monell</u>; therefore, Defendants' motion is **DENIED** as to this issue.

### C.    Qualified Immunity

To begin, "a qualified immunity defense alters the usual summary judgment burden of proof." <u>Brown v. Callahan</u>, 623 F.3d 249, 253 (5th Cir. 2010) (citing <u>Michalik v. Hermann</u>, 422 F.3d 252, 262 (5th Cir. 2005)). Because Officers Nugent, Carpenter, and Marsdin, Chief Carpenter, and Mayor Thornton as officials have pled the defense, Plaintiff now bears the burden to "rebut the defense by establishing a genuine fact

issue as to whether the official's allegedly wrongful conduct violated clearly established law. . . . but all inferences are drawn in [Plaintiff's] favor." Brown, 623 F.3d at 253.

Regarding the applicable standard, "the first step in qualified immunity analysis is to determine whether the plaintiff has alleged the violation of a clearly established federal constitutional (or federal statutory) right." Thompson v. Upshur County, TX, 245 F. 3d 447, 457 (5th Cir. 2001) (citing Hare v. City of Corinth, 135 F. 3d 320, 325 (5th Cir. 1998)). Because we determined Plaintiff has not shown a genuine dispute of material fact of a violation of Mr. Pikes' constitutional right to medical care, we do not address the second step of the qualified immunity analysis as to this alleged violation in the Section 1983 claim against any of the defendants asserting the defense. Nor do we continue the analysis concerning the excessive force claim against Officers Carpenter or Marsdin, Chief Carpenter, or Mayor Thornton.

We refer to our discussion *supra* wherein we proceeded on the presumption, for the purposes of this ruling only, that Plaintiff has established a genuine dispute of material fact of a violation of Mr. Pikes' Fourth Amendment right to be free from excessive force based on Officer Nugent's repeated use of his Taser X26. We base this presumption on the disputed material facts of Mr. Pikes' behavior at the time he was being tased by Officer Nugent. We proceed to the second step only as to the excessive force claim against Officer Nugent. The City as a municipality is not entitled to assert the defense; therefore, our conclusions concerning Officer Branch's failure to render medical attention are inapplicable to our qualified immunity analysis.

If the plaintiff satisfies the first step and alleges a violation of a clearly established federal constitutional or statutory right, "the Court must then assess whether the defendant's conduct was objectively reasonable in light of clearly established law." Thompson, 245 F.3d at 457.[11] To determine whether Officer Nugent's conduct was "objectively reasonable," we understand "'clearly established' [to mean] that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has held "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

At the summary judgment stage, we find a genuine dispute of material facts concerning whether a reasonable officer in Officer Nugent's position would believe he was violating Mr. Pikes' constitutional right. Plaintiff asserts Mr. Pikes was physically unable to comply with Officer Nugent's demands to stand up. Officer Nugent alleges Mr. Pikes was being passively resistant. Plaintiff has also asserted Mr. Pikes was yelling in pain, but Officer Nugent argues Mr. Pikes was yelling he did not want to go

---

[11]    The Supreme Court determined in Pearson v. Callahan, 555 U.S. 223, 242 (2009) that the district court is not required to determine first if there has been a violation of an established constitutional right. Rather, Pearson "simply recognizes that those [lower] courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Id. (noting a withdrawal from Saucier v. Katz, 533 U.S. 194 (2001) which implemented the two-step analysis for qualified immunity). We find the two-step analysis applicable in this case at the summary judgment stage. Specifically, our determination of the alleged violations by each (of the many named) Defendants narrows our analysis of the remaining issues. If there exists no genuine dispute of material fact that a particular Defendant did not violate Mr. Pikes' constitutional right, we find it unnecessary to address the objective reasonableness of the individual Defendant's conduct. Our goal in ruling on each pending motion in a single document is to decide those genuine disputes of material fact which remain and will proceed to trial.

28

to jail. The "clearly established" law governing Officer Nugent's use of force and his objective reasonableness turn on the facts surrounding Mr. Pikes' behavior during the application of Officer Nugent's Taser X26. Accordingly, Officer Nugent's motion for summary judgment is **DENIED** as to the issue of qualified immunity.

### D.     Louisiana State Law Intentional Torts

In her Complaint, Plaintiff alleges Defendants assaulted and battered Mr. Pikes, thereby causing his death. The legal standard for the state law intentional torts of assault and battery hinge on the determination of excessive force used by the officers. It is undisputed a valid warrant existed for Mr. Pikes' arrest; therefore, the arrest itself was lawful. Despite the lawfulness of the arrest, the use of "excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." Zerbe v. Town of Carencro, 884 So.2d 1224, 1228 (La. App. 3 Cir. 2004) (quoting Penn v. St. Tammany Parish Sheriff's Office, 843 So.2d 1157, 1161 (La. App. 1 Cir. 2003)).

#### 1.     *Officer Nugent*

As discussed above, there is a genuine dispute of material facts concerning whether Officer Nugent used excessive force against Mr. Pikes. Accordingly, Officer Nugent's motion for summary judgment will be **DENIED** as to this issue.

#### 2.     *Officers Marsdin and Carpenter*

We have determined no facts exist to support the claim that either Officer Marsdin or Carpenter used excessive force against Mr. Pikes. Their motion for summary judgment will be **GRANTED** as to this issue.

29

3.   *The City, Mayor Thornton, and Chief Carpenter*

There is no indication either Mayor Thornton or Chief Carpenter came into any physical contact with Mr. Pikes, and their motion for summary judgment will be **GRANTED** on the assault and battery claims. However, the City as the employer of Officer Nugent may be held vicariously liable for his acts against Mr. Pikes. Zerbe, 884 So.2d at 1228; see also, LeBrane v. Lewis, 292 So.2d 216 (La. 1974) (holding an employer vicariously liable for the intentional tort of an employee when the tortious conduct is closely connected to the time, place, and causation of employment duties). Therefore, we will **DENY** the City's motion for summary judgment on the issue.

E.   **Louisiana State Law Negligence**

Plaintiff asserts Defendants are liable under La. C.C. art. 2315 for an alleged use of excessive force against Mr. Pikes and alleged failure to provide medical attention. Article 2315 is the cornerstone for Louisiana tort liability. The intentional torts alleged were discussed above, and our analysis now proceeds to alleged negligent acts of the Defendants. The negligence of Officers Nugent, Carpenter, and Marsdin is based on excessive force and failure to provide medical attention. The negligence of Mayor Thornton and Chief Carpenter is based on their failure to supervise and/or train the officers properly. The City's negligence is asserted to be both vicarious (based on the acts of the officers as its employees) and direct (based on its alleged failure to supervise and/or train properly).

The Louisiana Supreme Court defines "negligence" as "conduct which falls below the standard of care established by law for the protection of others against an

30

unreasonable risk of harm." <u>Dobson v. La. Power and Light Co.</u>, 567 So.2d 569, 574 (La. 1990). The standard of care applicable to the officers' use of force is governed by the Louisiana Code of Criminal Procedure and jurisprudence. Article 220 provides an officer "may use reasonable force to effect [an] arrest and detention." La. C.Cr.P. art. 220. The reasonableness of the force depends on the totality of the circumstances surrounding the situation. Such factors include:

> the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

<u>Kyle v. City of New Orleans</u>, 353 So.2d 969, 973 (La. 1977) (citations omitted). As with the assault and battery claims, the facts underlying the negligence state law use of force claim turns on the same facts as those considered for the Section 1983 excessive force claims.

Concerning the medical attention claim, "a police officer owes a duty to a person while in his custody to protect him from injury and to care for his safety." <u>Evans v. Hawley</u>, 559 So.2d 500, 504 (La. App. 2 Cir. 1990) (citing <u>Griffis v. Travelers Ins. Co.</u>, 273 So.2d 523 (La. 1973). However, "this means that the officer must do only what is reasonable under the circumstances, and he is only liable for a certain category of risks to which his [arrestee] may be subjected." <u>Griffis</u>, 273 So.2d at 526. In addition, the officer must "see to it that reasonable medical service is provided to such person *if and when* his mental and/or physical condition discloses the need of such services." <u>Evans</u>, 559 So.2d at 505 (quoting <u>Cobb v. Jeansonne</u>, 50 So.2d 100,

31

106 (La. App. 2 Cir. 1951)) (emphasis added). The state law negligence action for medical attention requires an objective standard as compared to the Section 1983 deliberate indifference analysis which employs a subjective standard.

The police officers were employees of the City at the time of the incident, and negligence of the officers will result in vicarious liability of the City. In addition to this theory, Plaintiff also asserts the City, Mayor Thornton, and Chief Carpenter are directly negligent for their failure to train and/or supervise properly and in negligent hiring of the officers.

### 1. *Officer Nugent*

Officer Nugent's motion for summary judgment will be **DENIED** as to the negligence claim for use of force because genuine disputes of material fact exist concerning Mr. Pikes' behavior as the arrestee. Further, Plaintiff asserts Mr. Pikes showed signs of physical distress throughout the incident. In light of this alleged behavior combined with the Winnfield Police Department policy to seek medical attention immediately after a subject has been tased, we find Officer Nugent's failure to provide medical attention to Mr. Pikes earlier in time may be objectively unreasonable and we will **DENY** his motion for summary judgment as to this issue.

### 2. *Officers Marsdin and Carpenter*

We have already determined Officers Marsdin and Carpenter did not use any measure of physical force on Mr. Pikes that could be considered "unreasonable;" therefore their motion for summary judgment as to this negligence claim will be **GRANTED**. Officer Carpenter was not involved in the incident until all parties were at

the police station, and medical attention was sought shortly thereafter. Officer

Carpenter's actions were reasonable in this regard. Officer Marsdin also was not

present for the entire incident and Mr. Pikes was never actually in his custody.

Rather, Officer Marsdin only assisted Officers Branch and Nugent by verbally

ordering Mr. Pikes to stop running at the beginning of the incident and moving Mr.

Pikes to Officer Branch's car. Officers Marsdin's and Carpenter's behavior did not fall

below a reasonable standard of care for officers who were not present on the scene,

did not take Mr. Pikes into custody or transport him, and did not have information

about Mr. Pikes' physical distress, unlike Officers Nugent and Branch.

3.     <em><u>The City, Mayor Thornton, and Chief Carpenter</u></em>

No City administrator directly used any force on Mr. Pikes. Further, the City

(not Mayor Thornton or Chief Carpenter) is the employer of Officers Nugent and

Branch. In addition, "public officers such as mayors and police chiefs are not liable

under the doctrine of respondeat superior [vicarious liability] for the actions of their

subordinates." <u>London v. Ryan</u>, 349 So.2d 1334, 1342 (La. App. 1 Cir. 1977), *writ*

*denied* 351 So.2d 171 (La. 1977). Rather, the City could be liable under respondeat

superior for the negligent actions of the officers as described above. Because we find

a genuine dispute of material fact concerning the negligence of Officers Nugent and

Branch, the City's motion for summary judgment will be **DENIED** as to the issue of

vicarious liability for their negligence.

Regarding the claim for direct negligence for failure to train, supervise, and/or

hire, Plaintiff asserts no facts to support the argument that Mayor Thornton's actions

33

fell below the standard of care. In short, the Mayor had no knowledge and played no part in this incident. Chief Carpenter, on the other hand, was in the position of a supervisor and had a duty to ensure the officers were trained and prepared. The record shows Officer Branch had undergone heart surgery within a short period of time before the incident. During the Civil Service Hearing of Officer Nugent, Officer Branch stated he was unable to assist Officer Nugent fully in the pursuit and arrest of Mr. Pikes because he (Officer Branch) was tired and out of breath. (Doc. 200-1 at p. 22).

We find a genuine dispute of material fact concerning Officer Branch's ability to perform the physical requirements of his position, and this could result in direct negligence for improper supervision or hiring of officers on the part of Chief Carpenter. The Chief of Police is held to a duty to place individuals in a position which they are able to perform, and Chief Carpenter may have fallen short in this regard. Accordingly, Chief Carpenter's motion for summary judgment will be **DENIED** as to the state law claim for negligent training, hiring, and/or supervision.

For the same reason, we find a genuine dispute of material fact concerning the City's liability for negligent supervision or hiring. It is unclear from the record whether Officer Branch was placed in his position as a result of Chief Carpenter's actions or City policy. In addition, we refer to our discussion *supra* where we denied the City's motion for summary judgment on the Section 1983 municipal liability based on Officer Branch's failure to seek medical attention due to his training to transport the arrestee to the station as soon as possible for safety reasons. If true, such training

appears to controvert the policy of seeking medical attention for subjects immediately after being tased. This is a material fact concerning the state law negligence claim for Mr. Pikes' medical care. Finding a dispute of fact, we will **DENY** the City's motion for summary judgment as to this issue.

### F.    Medical Causation

For the sake of clarity, we note we have found no action by Officer Raymond Carpenter, Officer Alan Marsdin, or Mayor Thornton which would result in liability on any basis. We bear this in mind as we address the next motion.

All Defendants (except Officer Branch) timely filed a Motion for Summary Judgment Based on an Absence of Medical Causation. (Doc. 167).[12] In order for Plaintiff to sustain her burden on the wrongful death claim, she must show a genuine dispute of material fact that Defendants' actions caused Mr. Pikes' death. La. C.C. art. 2315.2 ("if a person dies due to the fault of another"). Defendants incorrectly assert an absence of medical causation would require Plaintiff's survival claims (La. C.C. art. 2315.1) to be dismissed. Plaintiff's survival claim is brought on behalf of the deceased and is for the pain and suffering allegedly caused by Defendants' acts prior to the death. Article 2315.1 does not require the tortfeasor's acts to have caused decedent's death. Accordingly, our determination of medical causation would not affect Plaintiff's survival claims against Officer Scott Nugent, Chief Johnny Ray Carpenter,

---

[12]    In her response (Doc. 198), Plaintiff asserts Defendants' motion should be denied because it was untimely. Defendants' motion is timely because it was filed by September 1, 2011 in accordance with the Plan of Work. (Doc. 129). September 6, 2011 was the date Defendants were granted leave to file the excess pages associated with the motion.

and the City of Winnfield.

In a case as this one where multiple causes are present, the standard for causation against Officer Nugent, Chief Carpenter, and the City is the "substantial factor" test. Roberts v. Benoit, 605 So.2d 1032 (La. 1991). The relevant inquiry at the motion for summary judgment stage is whether there is a genuine dispute of material facts concerning whether Defendants' actions were "a substantial factor in bringing about" Mr. Pikes' death. Perkins v. Entergy Corp., 782 So.2d 606, 611 (La. 2001).

The claims against Chief Carpenter and the City are based on the actions of Officer Branch in allegedly failing to render appropriate medical care to Mr. Pikes. As detailed above, we find a genuine dispute of material fact concerning whether Officer Branch's negligence (failure to seek medical attention) was a substantial factor in causing Mr. Pikes' death.

Considering the facts in the light most favorable to Plaintiff, we also find a genuine dispute of material fact concerning whether Officer Nugent's use of force (multiple applications of his Taser X26) was a substantial factor in Mr. Pikes' death. We recognize that with our rulings pursuant to Federal Rule of Civil Procedure 701, Plaintiff's only evidence in this regard is Dr. Baden's process of elimination (differential diagnosis) for determining Mr. Pikes' cause of death. At this stage, it is appropriate for both parties to present and cross-examine experts and for the factfinder to determine whether Officer Nugent's use of his Taser X26 was a substantial factor in causing Mr. Pikes' death. As we will detail below, we note carefully it is only the *use of the Taser X26* which could be attributed to causing Mr.

36

Pikes' death and not the ECD itself based on the medical evidence submitted.

### G.    Louisiana Products Liability Act

The issue of medical causation is directly tied to Taser International's Motion

for Summary Judgment based on the LPLA (Doc. 153). The LPLA establishes the

exclusive theory of liability for manufacturers for damages caused by their products

and is set forth in La. R.S. 9:2800.51.[13] The applicable standard under the LPLA is as

follows:

> A.    The manufacturer of a product shall be liable to a claimant for
> damage proximately caused by a characteristic of the product
> that renders the product unreasonably dangerous when such
> damage arose from a *reasonably anticipated use* of the product
> by the claimant or another person or entity.

La. R.S. 9:2800.54 (italics added). There are four categories which render a product

"unreasonably dangerous" under the LPLA: (1) construction or composition; (2)

design; (3) inadequate warning; (4) failure to conform to express warranty. Id. The

"unreasonably dangerous" characteristic must exist at the time the product left

control of the manufacturer or result from a reasonably anticipated alteration or

modification of the product. Id. Plaintiff has the burden of proving the required

elements under the LPLA. Id.

Plaintiff must show a genuine dispute of material fact concerning whether Mr.

Pikes' death was proximately caused by an unreasonably dangerous characteristic of

Officer Nugent's *reasonably anticipated use* of his Taser X26. Based upon the

---

[13]    In her Complaint, Plaintiff asserts a claim for negligence and a claim for strict liability
against TI. Based on the exclusive nature of the LPLA, we address both claims under
the Act.

evidence elicited in <u>this case only</u>, we find a trained police officer using his Taser X26 in drive stun mode nine times on a handcuffed individual is not a use "reasonably anticipated" by TI as the manufacturer.

In support, we reviewed studies, warnings, and guides produced in the record. To begin, it is undisputed Officer Nugent's Taser X26 was functioning properly. Officer Nugent completed the required training to carry an ECD as an officer with the Winnfield Police Department, and TI had no indication Officer Nugent would use his ECD in a way that deviated from proper policy and procedures. Even studies relied on by Plaintiff support the conclusion that the Taser X26 in drive stun mode does not result in serious harm *when used reasonably*. The Winnfield Taser policy requires Tasers "to be used only as instructed in the training course and only in accordance with the Departmental Policy and State Law." (Doc. 201-6 at p. 2).

In its Product Warnings for Law Enforcement, TI specifically warns against "prolonged or continuous exposure(s) to the TASER" because "continuous application(s) of the TASER device may contribute to cumulative exhaustion, stress, and associated medical risk(s)." (Doc. 153-12 at p. 2). In conjunction with the warnings from TI, the Winnfield Taser Policy suggests a Taser should be used prior to and to effectuate handcuffing a subject, as opposed to continuously using the Taser after the individual has been restrained as was done in the situation with Mr. Pikes. (Doc. 201-6 at p. 3). In short, Officer Pikes' use of his Taser X26 and Officer Branch's failure to seek medical attention, once proved, would be superceding and intervening factors in causing Mr. Pikes' death.

Finally, it is important to note our decision as to TI is largely based on Plaintiff's inability to identify any affirmative medical evidence that the ECD, by virtue of its electrical effect on the human body, can or did cause Mr. Pikes' death. Because he lacks any knowledge in the area, Dr. Baden's testimony as to the effect of ECDs on the body has been excluded and Plaintiff has supplied no individual who actually qualifies as an expert on the issue.

## IV.   Conclusion

This case revolves around the reasonableness of Officer Nugent's use of his Taser X26 and Officer Branch's bypassing the hospital after being advised of Mr. Pikes' purported need for medical attention. There also exist genuine disputes of material fact concerning supervisory liability for Chief Carpenter and the City of Winnfield for the manner Officers Nugent and Branch handled the incident.

For the reasons explained herein, the Motion to Exclude the Testimony of Dr. Michael Baden (Doc. 151) will be **GRANTED IN PART and DENIED IN PART**. The Motion to Exclude the Testimony of Dr. Anthony Storace (Doc. 154) will be **GRANTED IN PART and DENIED IN PART**. The Motion to Exclude the Testimony of Mr. Larry Alan Smith (Doc. 158) will be **GRANTED IN PART and DENIED IN PART**. The Motion for Summary Judgment by the City of Winnfield, Mayor Deano Thornton, and Chief of Police Johnny Ray Carpenter (Doc. 152) will be **GRANTED IN PART and DENIED IN PART**. The Motion for Summary Judgment by Taser International Based on the Louisiana Products Liability Act (Doc. 153) will be **GRANTED**. The Motion for Summary Judgment by Scott Nugent (Doc. 156) will be **GRANTED IN PART** and

39

**DENIED IN PART**. The Motion for Summary Judgment by Raymond Carpenter and Alan Marsdin (Doc. 157) will be **GRANTED**. Defendants' Motion for Summary Judgment Based on an Absence of Medical Causation (Doc. 167) will be **GRANTED IN PART and DENIED IN PART**.

Disposition will enter by a separate Judgment signed on this date.

SIGNED on this *13th* day of April, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE