UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **LATRINA THOMAS,** *et al.* | ) | **CIVIL ACTION NO. 1:08-cv-01167** |
| | ) | |
| v. | ) | **JUDGE DRELL** |
| | ) | |
| **CITY OF WINNFIELD,** *et al.* | ) | **MAGISTRATE JUDGE KIRK** |

<u>**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO DISMISSAL OF CLAIMS DUE TO DEFENDANT SCOTT NUGENT'S BANKRUPTCY**</u>

**I.     PLAINTIFF'S CLAIMS FALL UNDER 11 U.S.C. § 523(a)(3)(B) AND THEREFORE WERE AUTOMATICALLY EXEMPT FROM DISCHARGE IN DEFENDANT'S BANKRUPTCY**

Defendant's discharge of debts under 11 U.S.C. § 727 does not apply to any debt covered by an exception to discharge listed in 11 U.S.C. § 523(a). This includes Plaintiff's claims against Defendant. Plaintiff's claims are covered by the exception found in § 523(a)(3)(B), because they (1) are claims "for willful and malicious injury" under § 523(a)(6), and (2) were never properly listed or scheduled in Defendant's bankruptcy in accordance with the requirements of § 521(a)(1). *See* 11 U.S.C. § 523(a)(3)(B). Plaintiff's claims were thus *automatically exempt* from Defendant's discharge, and should be allowed to go forward.

    **A.     This Court Has Jurisdiction to Determine that Plaintiff's Claims Were Not Discharged**

Though Defendant contends that this Court lacks jurisdiction to determine whether Plaintiff's claims were discharged in Defendant's bankruptcy, his argument focuses on the wrong section of § 523(a). Defendant correctly notes that a bankruptcy court has exclusive jurisdiction to hold a claim exempt from discharge under § 523(a)(6), which is the exception for claims "for willful and malicious injury." But Plaintiff does not contend that her claims are

1

exempt under § 523(a)(6).  Rather, Plaintiff is contending that her claims are exempt under *§ 523(a)(3)(B)*, because they were *both* "for willful and malicious injury" *and* were not properly scheduled or listed by the debtor.  Bankruptcy courts do *not* have exclusive jurisdiction over this separate statutory exception to discharge.

  Courts agree that, even if a bankruptcy court has exclusive jurisdiction to determine whether a *properly* scheduled claim is one "for willful or malicious injury," the *improper* scheduling of such a claim means that "the requirement that the complaint be filed with the bankruptcy court disappears."  See *In re Fields*, 203 B.R. 401, 402 n.1 (Bankr. M.D. La. 1996).[1]  In fact, although Defendant cites a number of cases that discuss a bankruptcy court's exclusive jurisdiction to determine exemption under § 523(a)(6) for properly scheduled or listed claims, *every single one* of these cases distinguishes such jurisdiction from the concurrent jurisdiction that exists under § 523(a)(3)(B) for improperly scheduled or listed claims.[2]  The distinction

---

[1] Defendant's characterization of *Fields* is wrong.  *See* Dkt. #308 (Nugent Response Brief) at 6.  *Fields* makes no "qualifying statement" about a state court's inability to declare a debt non-dischargeable.  The full quote from *Fields* regarding jurisdiction is as follows:

> This complaint, which essentially seeks to have the Judgment Debt declared nondischargeable under section 523(a)(6) of the Code, was properly brought.  The debtor did not dispute the fact of non-receipt of timely notice by Plaintiff.  The effect of the failure timely to notify a creditor holding a right under section 523(a)(6) is the evaporation of the deadline established by section 523(c) by which the creditor must bring the complaint.  *As well, the requirement that the complaint be filed with the bankruptcy court disappears, with the creditor obtaining an expansion of jurisdiction so that state courts have the concurrent authority to entertain the dischargeability action.*

*In re Fields*, 203 B.R. at 402 n.1 (emphasis added).

[2] *See Casey v. Mohamed*, 323 B.R. 834, 836–37 (S.D.N.Y. 2005) ("This Court has concurrent jurisdiction with the Bankruptcy Court to determine whether Casey's claim survives Abdelrahman's bankruptcy charge under Section 523(a)(3)(B)."); *In re Walls*, 496 B.R. 818, 826 (Bankr. N.D. Miss. 2013) ("Jurisdiction over the dischargeability of a debt under § 523, other

comes from the Bankruptcy Code.  Section 523(c)(1) mandates that the bankruptcy court determine non-dischargeability under sections (a)(2), (a)(4), and (a)(6), but explicitly exempts section (a)(3)(B) from this requirement.  *See* 11 U.S.C. § 523(c)(1).[3]

Any assertion by Defendant that the bankruptcy court must still make an initial determination that the debt falls under § 523(a)(6) is baseless.  Case law makes clear that non-bankruptcy courts have jurisdiction to determine in the first instance whether § 523(a)(3)(B) applies, which includes a determination of whether a debt falls under § 523(a)(2), (a)(4), or (a)(6).  *See In re Haga*, 131 B.R. 320, 326 (Bankr. W.D. Tex. 1991) (noting that § 523(a)(3)(B) "gives the state court the same power it gives the bankruptcy court to determine if a creditor has a 'debt of a kind specified in paragraph (2), (4), or (6)'").  Indeed, a contrary rule would render § 523(a)(3)(B) a nullity, as the entire point of § 523(a)(3)(B) is to give creditors an opportunity to contest a discharge *after* their opportunity to raise the issue before the bankruptcy court has passed.  *See* Fed. R. Bankr. P. 4007(c) (creditor has sixty days from initial meeting of creditors to challenge discharge of a claim falling under § 523(a)(6)).

---

than under §§ 523(a)(2), (a)(4) or (a)(6), does not lie exclusively with the bankruptcy court."); *In re Rabeiro*, 151 B.R. 965, 966–67 (Bankr. M.D. Fla. 1993) ("It is clear that dischargeability, *vel non*, of the obligation of the Debtor under § 523(a)(5) is an issue which can be determined by the Circuit Court or by this Court, unlike the exceptions to discharge set forth in § 523(a)(2), (4), and (6), for which this Court's jurisdiction is exclusive."); *In re Diaz*, 120 B.R. 967, 971 (N.D. Ind. 1989) ("If this adversary proceeding were based on some subsection of § 523(a) other than (2), (4) or (6), the state court would have concurrent jurisdiction."); *In re Romeo*, 16 B.R. 531, 534 (Bankr. D.N.J. 1981) (noting "exclusive jurisdiction over the determination of dischargeability questions within sections 523(a)(2), (4) and (6) of the Bankruptcy Reform Act of 1978, *and concurrent jurisdiction with the appropriate local court over other types of debts*") (emphasis added).

[3] This Court's previous order regarding the bankruptcy of Defendant Cargle Branch, *see* Dkt. #96, is inapposite.  At issue with regard to Officer Branch was whether the parties could seek relief from the automatic stay—*not* whether a particular debt was exempt from discharge under 11 U.S.C. § 523(a).  That decision has no bearing on the matter at hand, as relief from the automatic stay is a separate aspect of bankruptcy governed by a separate statute.  *Compare* 11 U.S.C. § 362 (automatic stay) *with* 11 U.S.C § 523 (exceptions to discharge).

### B.     Plaintiff's Claims Are "For Willful and Malicious Injury"

Plaintiff's underlying claims, which allege that Defendant electroshocked Baron Pikes at least eight times while Pikes was handcuffed and yelling in pain, are unquestionably claims "for willful and malicious injury" under § 523(a)(6). Under Fifth Circuit law, a claim meets this definition so long as there is "either an objective substantial certainty of harm or a subjective motive to cause harm on the part of the debtor." *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003) (internal quotation marks and citation omitted). Defendant's repeated use of his Taser on Baron Pikes posed "an objective substantial certainty of harm." Indeed, the entire purpose of using a Taser in drive-stun mode is to inflict debilitating pain.

Defendant contorts this standard by suggesting that, in order for the section to apply, the debtor must have intended the precise injury inflicted upon the creditor. But Defendant can cite no case that so holds.[4] Moreover, such a rule would directly contradict the Fifth Circuit's pronouncement that § 523(a)(6) applies where there is "an objective substantial certainty of harm *or* a subjective motive to cause harm." *In re Williams*, 337 F.3d at 509 (emphasis added). There is no reason to think that the Fifth Circuit did not mean what it said: an action substantially certain to cause harm—such as repeatedly using a Taser on a handcuffed suspect—constitutes willful and malicious injury, regardless of the debtor's subjective motive.

Moreover, in *In re Sam*, 894 F.2d 778, 780 (5th Cir. 1990), the Fifth Circuit held that a creditor's claim that the debtor, a police officer, wrongfully arrested and beat him was a claim

---

[4] Although Defendant is correct that § 523(a)(6) does not cover debts arising from reckless or negligent conduct, *see Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998), this cannot help him here. Defendant's use of a Taser on Mr. Pikes was tantamount to battery—an *intentional* tort—not to recklessness or negligence. *See* Restatement (2d) Torts § 16 (actor can be liable for battery so long as he intends some form of offensive or harmful bodily contact, even if "the act was not done with the intention of bringing about the resulting bodily harm").

4

"for willful and malicious injury" under § 523(a)(6). The Fifth Circuit gave no indication that, in reaching this conclusion, it considered whether the debtor intended the precise injuries he inflicted on the creditor during the course of beating him.

Finally, Defendant is simply incorrect in asserting that "Plaintiff did not bring her claims based on temporary moments of pain resulting from Scott Nugent's use of his Taser in 'drive stun' mode, but rather brings her claims for the death of Mr. Pikes." Dkt. #308 at 11. Plaintiff has brought claims for both Baron Pikes's pain and suffering and for his death. Plaintiff's complaint alleged both wrongful death and a survival action for the pain, suffering, and violation of constitutional rights that Baron Pikes experienced before he died. *See* Dkt. #1 (Complaint) at 4–5.

Defendant is also plainly wrong in asserting that this Court concluded that his Taser did not cause Baron's Pikes death. This Court concluded in its April 13, 2012 ruling that Plaintiff could not maintain a product liability action against Taser, Inc. because Baron Pikes's death was not due to a *reasonably anticipated use* of Defendant's Taser. *See* Dkt. #246 (April 13, 2012 Ruling) at 37–38. But as this Court recognized, the separate issue of whether Defendant's *actual* use of his Taser caused Baron Pikes's death very much remains in dispute. Just one page prior to dismissing the claims against Taser, Inc., the Court found "a genuine dispute of material fact concerning whether Officer Nugent's use of force (multiple applications of his Taser X26) was a substantial factor in Mr. Pikes' death." *Id.* at 36. Defendant totally ignores this part of the Court's opinion.

### C. Plaintiff Did Not Receive Proper Notice or Have Actual Knowledge of Defendant's Bankruptcy

For a claim to be properly listed or scheduled under § 521(a)(1), it must list the name and address of the *creditor*, not the creditor's attorney. If the debtor fails to do this for a claim falling

5

under § 523(a)(6), then § 523(a)(3)(B) will apply unless the debtor proves that the creditor or her attorney had *actual* knowledge of the bankruptcy. Here, though Defendant may have produced evidence that he mailed an Amended Schedule F to Plaintiff's attorney's address, he has not shown either (1) why the listing of Plaintiff's attorney as a creditor constituted proper notice, or (2) that either Plaintiff or her attorney had actual knowledge of his bankruptcy.

Defendant does not even to attempt to counter the multiple cases cited by Plaintiff holding that a debtor cannot properly schedule or list a claim by using the creditor's attorney's name or address. *See In re Hutchison*, 187 B.R. 533, 535 (Bankr. S.D. Tex. 1995); *In re Barnes*, 326 B.R. 832, 838 (Bankr. M.D. Ala. 2005); *In re Szczepanik*, 146 B.R. 905, 912 (Bankr. E.D.N.Y. 1992). Defendant instead attempts to "distinguish" *In re Lyman*, 166 B.R. 333, 335 (Bankr. S.D. Ill. 1994), a case which does not involve the scheduling of attorneys at all and was cited by Plaintiff only for the general proposition that proper scheduling of a clam requires the correct name and address of the creditor. *See* Doc. #301 at 6. In short, Defendant has offered no response to the fact that his listing of Plaintiff's attorney as a creditor was improper under 11 U.S.C. § 521(a)(1).

Relatedly, the fact that Defendant may have mailed the Amended Schedule F to Plaintiff's attorney does not demonstrate that either she or Plaintiff had *actual knowledge* of Defendant's bankruptcy. As explained in Plaintiff's initial brief, "the actual knowledge exception in Section 523(a)(3)(B)," which may excuse a debtor's failure to send proper notice to the creditor, is "extremely narrow." *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993). It does not apply "unless it is *clear* that the creditor had actual notice in ample time fully to protect his rights." *Reyes v. Vantage S.S. Co.*, 672 F.2d 556, 558 (5th Cir. 1982) (internal quotation marks and citation omitted) (emphasis added). The mere fact that Defendant mailed notice to

6

Plaintiff's attorney, in light of declarations from both Plaintiff and her attorney that they never received such notice, is insufficient to establish this exception. *See In re Hutchison*, 187 B.R. at 536 (creditor's attorney, whose correct address was scheduled by debtor, had no actual notice where he testified that he did not receive notice of bankruptcy and no mention of bankruptcy was made in parallel state court proceeding against debtor).

### D.	Collateral Estoppel Does Not Apply

Defendant's argument that Plaintiff is collaterally estopped from contesting discharge is without merit. The Bankruptcy Court has made no sort of determination, much less a "valid and enforceable judgment," that Plaintiff's claims against Defendant were discharged. Though Defendant did receive a discharge of his debts, that discharge by its own terms extends only to those debts that may be discharged under 11 U.S.C. § 727. See Dkt. #308-4 (Nugent bankruptcy discharge). This does not include debts falling under § 523(a)(3)(B). *See* 11 U.S.C. § 727(b) ("*Except as provided in section 523 of this title*, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . .") (emphasis added). In other words, Plaintiff's claims were automatically exempt from discharge and therefore never subject to any order of the Bankruptcy Court.

Consequently, at least two of the necessary elements of collateral estoppel are lacking. First, the issue of whether Plaintiff's claims were discharged was not "necessary to support the judgment" of the Bankruptcy Court, since the Bankruptcy Court never determined whether Plaintiff's specific claims were subject to the discharge order. *See Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). Second, the issue was never "fully and vigorously litigated in the prior action," since Plaintiff was unaware of Defendant's bankruptcy until after the discharge was issued. *Id.*

7

## II. EVEN IF PLAINTIFF'S CLAIMS ARE DISCHARGED, SHE STILL MAY COLLECT FROM DEFENDANT'S INDEMNITORS OR INSURERS

Even if Plaintiff's claims were discharged in Defendant's bankruptcy, Plaintiff is still permitted to proceed with the claims in order to establish liability that may lead to collection from Defendant's indemnitors or insurers. As explained in Plaintiff's previous brief, "courts are in near unanimous agreement that § 524(e) permits a creditor to bring, and proceed in, an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer." *In re Coho Res., Inc.*, 345 F.3d 338, 343 (5th Cir. 2003) (internal quotation marks and citation omitted). The plaintiff need not name the debtor's insurer as a defendant to proceed with such an action. *See In re Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993) (permitting suit to proceed against debtor, even though debtor's insurer was not a party to the suit). Even Defendant concedes that "Plaintiff may be correct" that a discharge would not preclude recovery against indemnitors or insurers. Dkt. #308 at 12.

Defendant himself has shown that he has at least some insurance coverage for liability resulting from his activities as a law enforcement officer. *See* Dkt. #308-7 (Liability Policy). Though Defendant suggests he may not be covered for claims made against him in his individual capacity,[5] the Fifth Circuit has made clear that a creditor may proceed nominally against a debtor *even if the debtor's insurer might deny coverage*:

> Even if the insurance company denies coverage, the debtor will not be impermissibly burdened. If the insurance company is unwilling to defend its insured, the debtor may simply default, knowing that the judgment will be unenforceable against the insurance

---

[5] Plaintiff, after reviewing the policy materials provided by Defendant, disagrees that Defendant's liability coverage distinguishes between "official capacity" and "individual capacity" claims. Should the need arise, Plaintiff can litigate coverage in a separate proceeding with Defendant's insurer.

> company. . . . The judgment creditor may then litigate with the insurance company.

*In re Edgeworth*, 993 F.2d at 54 n.10; *see also In re Jet Florida Sys., Inc.*, 883 F.2d 970, 976 (11th Cir. 1989) (allowing discharged claim to proceed even though it was not clear whether debtor or debtor's insurer bore costs of defense, since "the practical and economic realities compel the *insurance company* to defend the underlying action") (emphasis in original).

In other words, the only burden this suit would pose to the Defendant would be on his time, but that burden alone is an insufficient ground for dismissing Plaintiff's claims and giving Defendant's insurer a potential windfall. *See In re Edgeworth*, 993 F.2d at 54 (time is "not a burden alleviated by § 524 when the purpose of the suit is to establish [the debtor's] nominal liability"). Moreover, in the context of this particular case, the added burden on Defendant's time will likely be very small, as Plaintiff has claims pending against other defendants, including a *respondeat superior* claim under state law against the City of Winnfield arising from Defendant's actions. *See* Dkt. #246 at 30, 33.[6] This means that even if Defendant is not a party at trial, he will still be involved as a key witness. In short, the cost to Defendant of allowing Plaintiff's claims to go forward is much lower than the potential cost to Plaintiff of dismissing her claims before trial.

Finally, that Defendant's liability coverage may contain an exclusion for punitive damages is completely irrelevant. Simply because Plaintiff's claims are "for willful and malicious injury" does not mean that any damages will be solely punitive in nature. Plaintiff can still obtain compensatory damages, which clearly do fall under Defendant's liability coverage.

---

[6] Defendant's discussion of liability on the part of the City of Winnfield under 42 U.S.C. § 1983, *see* Doc. #308 at 12, is irrelevant to the City's potential liability on a *respondeat superior* claim under state law, which Defendant completely ignores.

### III. CONCLUSION

For the foregoing reasons, this Court should not dismiss Plaintiff's claims against Defendant Scott Nugent.

This the 22nd day of January, 2015.

/s/ Carol D. Powell Lexing
Carol D. Powell Lexing
2485 Tower Drive, Suite 6
Monroe, LA 71201
Telephone: (318) 324-0700
Fax: (318) 324-0702
Email: legaldove2@yahoo.com
Bar Roll No. 21033

*Lead Counsel for Plaintiff Latrina Thomas*

/s/ Michael A. Vatis
Michael A. Vatis
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3927
Fax: (212) 506-3950
Email: mvatis@steptoe.com
Admitted *pro hac vice*

Benjamin B. Watson
1330 Connecticut Ave NW
Washington, D.C. 20036
Telephone: (202) 429-6751
Fax: (202) 429-3902
Email: bwatson@steptoe.com
Admitted *pro hac vice*

*Counsel for Plaintiff Latrina Thomas*